**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| NEUROLOGICAL SURGERY PRACTICE OF LONG ISLAND, PLLC, | : | |
| Plaintiff, | : | |
| -against- | : | Case No. 2:21-cv-01549-JS-JMW |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY and CONNECTICUT GENERAL LIFE INSURANCE COMPANY, | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW OPPOSING MOTION FOR LEAVE TO AMEND COMPLAINT**

**TABLE OF CONTENTS**

**Page**


TABLE OF AUTHORITIES ....... ii

PRELIMINARY STATEMENT ....... 1

STATEMENT OF FACTS ....... 2

A. The Proposed Amended Complaint ....... 2

B. The Claims at Issue ....... 4

PROCEDURAL HISTORY ....... 4

LEGAL STANDARD ....... 6

ARGUMENT ....... 6

POINT I CIGNA IS NOT A PROPER PARTY WITH RESPECT TO PATIENTS WHO WERE NOT INSURED UNDER A CIGNA INSURED OR ADMINISTERED PLAN. ....... 8

POINT II PLAINTIFF'S LACK OF STATUTORY STANDING UNDER ERISA IS AN UNCURABLE DEFECT IN PLAINTIFF'S PAC. ....... 9

POINT III PLAINTIFF DOES NOT HAVE A RIGHT OF ACTION TO PURSUE UNDER STATE LAW WITH RESPECT TO THE NON-ERISA PLANS ....... 13

POINT IV ERISA PREEMPTS PLAINTIFF'S PAC. ....... 14

POINT V THE PAC FAILS TO STATE A VIABLE CLAIM UNDER NEW YORK STATE LAW FOR BREACH OF CONTRACT OR UNJUST ENRICHMENT ....... 17

1. Breach of Implied-In-Fact Contracts – Third Cause of Action ....... 18

2. Unjust Enrichment – Fourth Cause of Action ....... 22

POINT VI PLAINTIFF'S CLAIMS ARE OTHERWISE TIME-BARRED. ....... 24

CONCLUSION ....... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)....................14

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)....................9, 10

*Andrews v. Sony/ATV Music Publ'g, LLC*,
No. 15-cv-7544 (AJN), 2017 WL 770614 (S.D.N.Y. Feb. 24, 2017)....................19

*Angstadt v. Empire HealthChoice HMO, Inc.*,
No. 15-cv-1823 (SJF)(AYS), 2017 WL 10844692 (E.D.N.Y. Mar. 16, 2017)....................12, 14

*Bassel v. Aetna Health Ins. Co. of New York*,
No. 17-cv-05179 (ERK)(RER), 2018 WL 4288635 (E.D.N.Y. Sept. 7, 2018)....................21

*Berry v. MVP Health Plan, Inc., et al.*,
No. 06-cv-120 (NAM)(RFT), 2006 WL 4401478 (N.D.N.Y. Sept. 30, 2006)....................18

*Brain & Spine Surgeons of New York, P.C., v. Triple -S Salud Inc.*,
No. 22-cv-08951 (PMH), 2024 WL 4150103 (S.D.N.Y. Sept. 11, 2024)....................23

*Broad St. Surgical Ctr. LLC v. UnitedHealth Group, Inc.*,
No. 11-cv-2775 (JBS)(JS), 2012 WL 762498 (D.N.J. Mar. 6, 2012)....................22

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
70 N.Y.2d 382 (1987)....................22

*Cleveland Wrecking Co. v. Hercules Const. Corp.*,
23 F. Supp. 2d 287 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 233 (2d Cir. 1999)....................20

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*,
74 N.Y.2d 475 (1989)....................19

*Da Silva Plastic and Reconstructive Surgery, P.C. v. United Healthcare Insurance Company of New York, Inc.*,
Index No. 621408/2021 (August 18, 2022)....................11

*DeCastro v. City of New York*,
No. 16-cv-3850 (RA), 2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020)....................6

*El-Nahal v. FA Mgt., Inc.*,
126 A.D.3d 667 (2d Dep't 2015)....................19

*Enigma Mgmt. Corp. v. Multiplan, Inc.*,
994 F. Supp. 2d 290 (E.D.N.Y. 2014) ....................18

*Farkas v. UFCW Local 2013 Health & Welfare Fund*,
No. 17-cv-2598 (RJD)(RER), 2018 WL 5862741 (E.D.N.Y. Sep. 12, 2018)....................11

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013)....................24

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009)....................6

*Hunt v. All. N. Am. Gov't Income Tr., Inc.*,
159 F.3d 723 (2d Cir. 1998)....................6

*Josephson v Oxford Health Ins., Inc.*,
Index No. 0443/07, 2011 WL 5358495 (Sup. Ct. Nassau Co. Oct. 31, 2011)....................22

*Josephson v. United Healthcare Corp.*,
No. 11-cv-3665 (JS)(ETB), 2012 WL 4511365 (E.D.N.Y. Sept. 28, 2012) ....................23

*Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*,
98 A.D.3d 403 (1st Dep't 2012), *affd* 20 N.Y.3d 1082 (2013)....................19

*Klein & Co.Futures Inc. v. Bd. of Trade*,
464 F.3d 255 (2d Cir. 2006)....................17

*Kolchins v. Evolution Mkts., Inc.*,
128 A.D.3d 47 (1st Dep't 2015) *aff'd* 31 N.Y.3d 100 (2018) ....................19

*Kozemko v. Griffith Oil Co.*,
256 A.D.2d 1199 (4th Dep't 1998)....................25

*Leibowitz v. Cornell Univ.*,
584 F.3d 487 (2d Cir. 2009)....................22

*LI Neuroscience Specialists v. Blue Cross Blue Shield of Florida*,
361 F. Supp.3d 348 (E.D.N.Y. 2019) ....................11

*Local 917, Intern. Broth. of Teamsters v. N.L.R.B.*,
577 F.3d 70 (2d Cir. 2009)....................19

*Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*,
385 F. Supp. 2d 256 (S.D.N.Y. 2005)....................19

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*,
No. 13-cv-6551 (DLC), 2016 WL 2939164 (S.D.N.Y. May 19, 2016) ....................10

*Mbody Minimally Invasive Surgery, P.C. v. Empire HealthChoice HMO, Inc.*,
No. 13-cv-6551 (TPG), 2014 WL 4058321 (S.D.N.Y. Aug. 15, 2014) ....12

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
857 F.3d 141 (2d Cir. 2017)....9, 10, 11

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*,
No. 16-cv-5265 (JPO), 2019 WL 1409806 (S.D.N.Y. Mar. 28, 2019) ....13

*Med. Soc'y v. UnitedHealth Grp. Inc.*,
No. 16-cv-5265 (JPO), 2021 WL 4263717 (S.D.N.Y. Sept. 20, 2021)....12

*Montefiore Medical Center v. Teamsters Local 272*,
642 F.3d 321 (2d Cir. 2011)....18, 24

*Murphy Med. Associates, LLC v. Yale U.*,
126 F.4th 1107 (2d Cir. 2024) ....15, 16

*Murphy Med. Assocs., LLC v. Yale Univ.*,
No. 24-944, 2024 WL 4656321 (2d Cir. Nov. 4, 2024) ....10, 11

*Nasca v. Greene*,
216 A.D.3d 648 (2d Dep't 2023)....23

*Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of New York, Inc.*,
No. 11-cv-8517 (BSJ)(AJP), 2012 WL 4840807 (S.D.N.Y. Oct. 4, 2012) ....18

*Neurological Surgery, P.C. v. Aetna Health Inc.*,
290 F. Supp.3d 267 (E.D.N.Y. 2021) ....16

*Neurological Surgery, P.C. v. Aetna Health Inc.*,
511 F. Supp. 3d 267 (E.D.N.Y. 2021) ....8, 13

*Neurological Surgery, P.C. v. Northrop Grumman Systems Corp.*,
No. 15-cv-4191 (DRH)(AKT), 2017 WL 389098 (E.D. N.Y. Jan. 26, 2017)....8

*Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*,
No. 18-cv-560 (GRB), 2020 WL 13931876 (E.D.N.Y. Oct. 30, 2020)....8

*Neurological Surgery, P.C. v. Siemens Corp.*,
No. 17-cv-3477 (ADS)(AKT), 2017 WL 6397737 (E.D.N.Y. Dec. 12, 2017) ....20, 21

*Neurological Surgery, P.C. v. Travelers Co.*,
243 F. Supp.3d 318 (E.D.N.Y. 2017) ....8, 9

*New York Hosp. Med. Ctr. of Queens v. New York Cent. Mut. Fire Ins. Co.*,
8 A.D.3d 640 (2d Dept. 2004) ....13

*New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995)....15

*Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Oxford Health Ins. Co., Inc.*,
77 Misc. 3d 958 (N.Y. Sup. Ct. 2022)....15

*Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. UnitedHealthcare Serv., LLC*,
No. 23-cv-0516 (OEM)(ARL), 2024 WL 4252045 (E.D.N.Y. Sept. 20, 2024)....16

*Norman Maurice Rowe, MD, MHA, LLC v. Oxford Health Ins. Co., Inc*,
No. 714272/2021, 2022 WL 2980647 (N.Y. Sup. Ct. July 11, 2022)....15

*Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health and Life Ins. Co.*,
No. 23-cv-1134, 2024 WL 2813721 (2d Cir. June 3, 2024)....16

*Pekler v. Health Ins. Plan of Greater New York*,
67 A.D.3d 758 (2d Dep't 2009)....24

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987)....14

*Rojas v. Cigna Health & Life Ins. Co.*,
793 F.3d 253 (2d Cir. 2015)....12

*Romney v. Lin*,
94 F.3d 74 (2d Cir. 1996)....15

*Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*,
No. 23-cv-8521 (JSR), 2023 WL 8534865 (S.D.N.Y. Dec. 11, 2023)....22, 23

*Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*,
No. 23-cv-8529 (DLC), 2024 WL 382143 (S.D.N.Y. Feb. 1, 2024)....23

*Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*,
No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024)....23

*Rowe Plastic Surgery of New Jersey, L.L.C. v. United Healthcare*,
No. 23-cv-4352 (AMD) (JAM), 2024 WL 4309230 (E.D.N.Y. Sept. 26, 2024)....23

*Salzberg v. Aetna Ins. Co.*,
No. 17-cv-7909 (VB), 2018 WL 1275776 (S.D.N.Y. Mar. 12, 2018)....17, 18

*SeeMosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*,
14 F.Supp.3d 191 (S.D.N.Y. 2014)....14

*Shuriz Hishmeh, M.D., PLLC v. Empire Health Choice Assurance, Inc.*,
No. 19-cv-3144 (JMA)(ARL), 2020 WL 4452112 (E.D.N.Y. Aug. 3, 2020)....12

*Star Multi Care Services, Inc. v. Empire Blue Cross Blue Shield*,
6 F. Supp. 3d 275 (E.D.N.Y. 2014) ....................21

*T&G Med. Supplies, Inc. v. State Farm Mut. Auto. Ins. Co.*,
2005 NY Slip Op 50636(U), 7 Misc.3d 1017(A) (Civ. Ct., N.Y. Cty. 2005)....................13

*Theunissen v. United HealthCare Grp., Inc.*,
365 F. Supp.3d 242 (D. Conn. 2019)....................15

*Thome v. Alexander & Louisa Calder Found.*,
70 A.D.3d 88 (1st Dep't 2009) ....................19

*Travelers Indem. Co. v. Household Intern., Inc.*,
775 F. Supp. 518 (D. Conn. 1991)....................9

*Venezia v. Luxoticca Retail N. Am. Inc.*,
No. 13-cv-4467 (RJS), 2015 WL 5692146 (S.D.N.Y. Sept. 28, 2015) ....................19

**Statutes**

28 U.S.C. §1331....................18

28 U.S.C. §1367....................17, 18

29 U.S. Code § 1022 ....................25

29 U.S. Code § 1024 ....................25

Employee Retirement Income Security Act of 1974 .................... *passim*

**Rules and Regulations**

CPLR §§ 203, 231....................7, 24

Fed. R. Civ. P. 15....................6

Fed. R. Civ. P. 19....................8

26 C.F.R. § 2560.503-1....................25

29 C.F.R. § 2520.102–3 ....................25

**Other Authorities**

17A Am. Jur.2d *Contracts* § 190 (2015) ....................19

## PRELIMINARY STATEMENT

Defendants, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively "Cigna" or "Defendants"), by and through the undersigned counsel, respectfully submit the following memorandum of law in support of their opposition to Plaintiff's motion for leave to amend the Complaint.

Plaintiff, an out-of-network medical provider, seeks leave to amend its Complaint in an attempt to revive claims that remain legally deficient. The proposed amendments fail to cure the fundamental flaws that warranted dismissal of the original Complaint and do not alter the fact that Plaintiff lacks a viable cause of action against Defendants.

First, Plaintiff's claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et. seq.* (as amended) ("ERISA") remain futile because Plaintiff has not established a right of action to assert those claims. While Plaintiff asserts that it received assignments of benefits from all 126 patients whose claims are at issue, it fails to demonstrate that these assignments are valid under the governing health plans. Indeed, 62 of the 115 ERISA-governed plans at issue contain express anti-assignment provisions that bar Plaintiff from pursuing claims on behalf of plan participants. Courts in this Circuit, including this Court, have consistently upheld such anti-assignment clauses and dismissed claims by out-of-network providers attempting to circumvent them.

Second, Plaintiff's state law claims—including its breach of implied-in-fact contract and unjust enrichment claims—are preempted by ERISA. These claims, which seek to recover additional reimbursements under ERISA-governed health plans, directly relate to the administration of benefits and, as such, are barred by ERISA's broad preemption provisions. Even if the claims were not preempted, they are legally insufficient. Plaintiff has not identified any agreement with Defendants regarding reimbursement rates, nor has it alleged that Defendants

received any direct benefit from the medical services Plaintiff rendered. Courts have repeatedly rejected similar claims by out-of-network providers attempting to impose reimbursement obligations outside the terms of the governing health plans.

Third, at least 52 of Plaintiff's claims are time-barred. Eight (8) Patients' claims arise from services provided more than six years before Plaintiff filed suit, rendering them untimely under New York's statute of limitations. Additionally, 47 claims contain explicit one-year or three-year contractual limitations periods, which are enforceable under both ERISA and state law. Plaintiff's argument that these provisions were not disclosed or are otherwise unenforceable is unsupported and contradicts well-established precedent.

In short, amending the Complaint would be futile, because Plaintiffs' legal theory remains flawed. It also would unduly delay matters and prejudice Defendants. This Court should therefore deny Plaintiff's motion for leave to amend its Complaint.

## STATEMENT OF FACTS

### A. The Proposed Amended Complaint

Plaintiff alleges in its Proposed Amended Complaint ("PAC" or "Am. Compl.") (as it did in its original Complaint), that it is an out-of-network provider (*compare* Compl., ¶¶ 7-8, *with* Am. Compl., ¶¶ 7-10) and that all of its Patients whose claims are at issue in this case, "presented to [its offices] with health conditions requiring [Plaintiff] to provide them with medically necessary neurosurgical services." (*Compare* Compl., ¶ 31, *with* Am. Compl., ¶ 110). Plaintiff further alleges that all of those services "were covered services under the applicable health plan documents." (*Compare* Compl., ¶ 32, *with* Am. Compl., ¶ 111).

Plaintiff also alleges in its PAC that even though it is an out-of-network provider, "it routinely provides medical services (including urgent and emergent services) to Cigna Members and receives assignments of benefits from these Cigna Members to permit [Plaintiff] to submit

claims directly to, and receive payment directly from, Cigna." (*Id.*, ¶ 10). Plaintiff further alleges that "the Plans obligate Cigna to reimburse [it] for the services provided at what the Plans define as the 'Maximum Reimbursable Charge,' less any co-payment, co-insurance, member out-of-pocket, or deductible amounts." (*Id.*, ¶ 9). The spreadsheet attached to the PAC identifies Plaintiff's alleged "Charge[s]" (totaling $31,295,460.00), and "Received Total" (totaling $1,058,362.73) – leaving an alleged "balance" of $30,237,097.27, which reflects the purported amount outstanding. (*Id.*, Exh. A). Nowhere in the PAC does Plaintiff identify the "Maximum Reimbursable Charge" rate it contends Cigna should have paid for any of the services in issue. (*Id.*, ¶ 9).

Almost identical to its original Complaint, Plaintiff alleges in its PAC that Cigna "engaged in communications or discussions with [Plaintiff] acknowledging that [Plaintiff] was providing the enrollees with covered health care service." (*Compare* Compl., ¶ 34, *with* Am. Compl., ¶ 113).The PAC further alleges that "it was *mutually understood* that Cigna would reimburse [Plaintiff] for medically necessary services covered under the Plans' terms." (*Compare* Compl., ¶ 35, *with* Am. Compl., ¶ 114). (emphasis added). The PAC concludes with the following allegation: "By reason of the foregoing, express contracts or contracts implied-in-fact arose between Cigna and [Plaintiff], whereby [Plaintiff] agreed to provide covered health care services to Cigna Members in exchange for Cigna paying [Plaintiff] for those covered health care services at the rates and levels set forth under the applicable Plans" (*Compare* Compl., ¶ 37, *with* Am. Compl., ¶ 116).

Based on the foregoing allegations, the PAC reasserts the following four of the seven causes of action asserted in its original Complaint: (1) wrongful underpayment of benefits under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) as the Patients' assignee (First Count); (2) breach of the non-ERISA health plans as the Patients' assignee (Second Count); (3) breach of implied-in-

fact contract (Third Count); and (4) Unjust Enrichment (Fourth Count). Plaintiff's PAC removes the following three causes of action alleged in its original Complaint: for breach of fiduciary duty pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3); tortious interference with contract; and breach of the Patients' health plans as a third-party beneficiary, as well as its improper claim for punitive damages. (*See* Compl., ¶¶ 60-70, 79, 89, 97-108).

**B. The Claims at Issue**

The PAC and its attached spreadsheet, appear to allege that Plaintiff is entitled to additional benefit payments on 798 claims (up from 680 in its original Complaint), and which are associated with 126 Patients (up from 119 in its original Complaint), which claims arise from and are governed by 102 unique health benefits plans. (Am. Compl., Exh. A; *See* Declaration of Matthew P. Mazzola ("Mazzola Decl."), ¶¶ 3-5). Based on Cigna's internal review of Plaintiff's PAC and spreadsheet, it has determined that 115 of the 126 Patients whose claims are at issue are participants in, or beneficiaries of, employee welfare benefit plans governed by ERISA (*i.e*., the ERISA Plans). (*See* Anderson Decl., ¶ 4, Exhs. 001-115). Cigna has also determined that 3 of the 126 Patients whose claims are at issue are participants in, or beneficiaries of, non-ERISA health benefit plans. (*Id*., ¶ 5, Exhs. 119-121). Cigna determined that at least 8 of the 126 of the Plaintiff's patients whose claims are at issue are not insured under Cigna administered and/or insured plans. (*Id*., ¶ 6).

**PROCEDURAL HISTORY**

On March 24, 2021, Plaintiff commenced this action by filing the Complaint with the Clerk of this Court. (Doc. No. 1). On November 2, 2023 and June 17, 2024, Magistrate Judge Wicks issued Minute Orders directing the parties to conduct discovery and provided a schedule for them

to do so. (*See* Doc. No. 43).[1] On May 27, 2024, upon request of the parties, Judge Wicks entered an Order extending the deadline for the completion of discovery, to June 17, 2024, and directing Cigna to file an answer to the Complaint by June 28, 2024. On June 28, 2024, Defendants filed a pre-motion conference letter requesting leave of court to file its proposed motion to dismiss Plaintiff's Complaint. (Doc. No. 44) Plaintiff filed its response to that letter on July 12, 2024. (Doc No. 147). On August 16, 2024, Defendants served Plaintiff with a discovery deficiency letter. On October 3, 2024, the Court waived it pre-motion conference requirement and set a briefing schedule for Defendant's motion to dismiss. (Doc. Order, October 3, 2024). Pursuant to Judge Seybert's bundling rule, Defendants served Plaintiff with their motion to dismiss on November 8, 2024. (Doc. No. 51). Plaintiff was instructed to serve Defendants with its Opposition by December 16, 2024. (Doc. No. 53). Instead, Plaintiff filed a letter motion on December 12, 2024, requesting leave to file an amended complaint. Judge Seybert denied the letter motion and ordered:

> (1) By no later than January 15, 2025, Plaintiff shall either: (a) file and serve a motion to amend the complaint, attaching a copy of the proposed amended complaint as an exhibit, or (b) serve its opposition to Defendants' motion to dismiss; and
> (2) By no later than February 5, 2025, and depending upon Plaintiff's filing (as described in item (1), above), Defendants shall either: (a) file their response to Plaintiff's motion to amend the complaint, which response may be their consent to Plaintiff's filing said forthcoming proposed amendment, or (b) file their reply in further support of their motion to dismiss.

(Doc. Order, January 14, 2025).

Pending Plaintiff's filing, the parties' requested a stay of further discovery, which request was granted on December 18, 2024. (Doc. Order, December 18, 2024). After an extension request,

[1] On February 12, 2024, Defendants served their First Requests for Production of Documents to Plaintiff. (*See* Defendants' First Request for the Production of Documents attached to the Mazzola Declaration as Exhibit "A"). Plaintiff failed to respond to Defendants' Requests (which responses remain outstanding to this date). Instead, Plaintiff produced documents including medical records, which were not responsive to the majority of Defendants' Requests. Significantly, Plaintiff did not produce *any* of the assignments of benefits it allegedly received from its patients whose claims are in issue in this case. By letter to Plaintiff's Counsel dated August 16, 2024, Defendants outlined the deficiencies in Plaintiff's discovery responses, including Plaintiff's failure to produce any of the purported assignment of benefits it allegedly received from its patients in the original Complaint and PAC. (*See* Mazzola Declaration as Exhibit "B"). To date, Plaintiff has not produced any of the assignments of benefits it allegedly received from its patients in either the original Complaint or PAC.

Plaintiff's Motion for Leave to File Document Second Amended Complaint was filed along with supporting documents on January 22, 2025. (Doc. No. 56). Defendants requested an extension to file their response to and including, February 26, 2025. (Doc. No. 57), which request was granted.

## LEGAL STANDARD

Leave to amend a pleading shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court may "deny leave for good reason, including [1] futility, [2] bad faith, [3] undue delay, or [4] undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). "Even if good cause is established, however, a court may deny a motion to amend if the proposed amendment 'would be futile, unduly prejudicial, or otherwise improper.'" *DeCastro v. City of New York*, No. 16-cv-3850 (RA), 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020) (cleaned up).

## ARGUMENT

This Court should reject Plaintiff's attempt to delay the inevitable. Plaintiff's attempt to amend its original Complaint by seeking leave of Court to file its PAC should be denied because it does not cure the deficiencies of its original Complaint. In short, Plaintiff's proposed amendments are futile because the causes of action asserted in Plaintiff's PAC are subject to dismissal for all the same reasons they were subject to dismissal when included in Plaintiff's original Complaint. Plaintiff's removal of three of its original causes of action to create its PAC does nothing to cure the issues that make the remaining four causes of action dismissible. As a matter of hornbook law, a court properly denies leave to amend "where there is no merit in the proposed amendments or amendment would be futile." *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998). Plaintiff's PAC is futile, and this case should be dismissed in its entirety and with prejudice. This is so for the following reasons:

First, the PAC does nothing to demonstrate that the Plaintiff has statutory standing under ERISA to pursue any of its claims against the Defendants. Specifically, while Plaintiff alleges in its PAC (as it alleged in its original Complaint) that it received assignments of benefits from all of the patients whose claims are in issue, it fails to allege that any of them are valid under the patients' respective health benefit plans. In this regard, Defendants have determined the following through its investigation and discovery activities. Eight (8) of the 126 of the Plaintiff's patients whose claims are at issue are not insured under Cigna administered and/or insured plans and should be dismissed from the PAC. 62 of the 115 ERISA Plans at issue here include unambiguous anti-assignment provisions. (*See* Appendix A; Anderson Decl., ¶ 4, Exhs. 001-115). Thus, even if Plaintiff can produce assignments for any of the patients whose claims arise under these 62 plans, they would be void by way of the unambiguous anti-assignment provisions.

Even if some of Plaintiff's claims could survive under ERISA, Plaintiff's state law causes of action for breach of implied-in-fact contract (Third Cause of Action) and unjust enrichment (Fourth Cause of Action) are preempted by ERISA and must be dismissed. As for the state law claims arising under the three (3) non-ERISA Plans, each of these also include an unambiguous anti-assignment provision. Thus, any claims by Plaintiff as an assignee of its patients' benefits that arise under these three (3) plans, must be dismissed because the purported assignments are rendered void by the anti-assignment provisions.

In addition to the foregoing, 52 of Plaintiff's remaining claims fail because: (1) eight (8) are claims for services rendered more than six years prior to the filing date of Plaintiff's original Complaint, *see* N.Y. CPLR §§ 203(a), 231(2); and (2) 47 are subject to dismissal based on the contractual one-year or three-year limitation of actions provisions outlined in the governing plans for each of these claims.

This Court has routinely dismissed the same or similar claims filed by this same Plaintiff and its counsel for the same reasons outlined above. *See, e.g., Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267 (E.D.N.Y. 2021) (granting defendant's motion to dismiss in part by (1) dismissing 111 claims pursuant to 86 ERISA Plans containing valid anti-assignment provisions because Plaintiff lacked standing to sue; (2) holding Aetna did not waive the anti-assignment provisions by paying claims directly to Plaintiff; (3) holding that Plaintiff's state law causes of action for breach of implied-in-fact contract, unjust enrichment and tortious interference were preempted by ERISA); *Neurological Surgery, P.C. v. Oxford Health Plans (NY), Inc.*, No. 18-cv-560 (GRB), 2020 WL 13931876, *11 (E.D.N.Y. Oct. 30, 2020) (same); *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp.3d 318 (E.D.N.Y. 2017)(same); *Neurological Surgery, P.C. v. Northrop Grumman Systems Corp.*, No. 15-cv-4191 (DRH)(AKT), 2017 WL 389098 (E.D. N.Y. Jan. 26, 2017)(same). This Court should therefore issue a similar order dismissing Plaintiffs' PAC here.

## POINT I
## CIGNA IS NOT A PROPER PARTY WITH RESPECT TO PATIENTS WHO WERE NOT INSURED UNDER A CIGNA INSURED OR ADMINISTERED PLAN.

Seven of the Patients at issue in this case are participants in self-funded plans (in which their employer is responsible for paying all benefits); and at least one of the Patients is not enrolled in a Cigna plan. Where an employer is responsible for paying all benefits under a plan, Plaintiff has no basis to assert a claim against Defendants for sums it claims are due under that plan. Moreover, the employers who are responsible for payment under those plans are necessary parties pursuant to Rule 19, Fed. R. Civ. P., because "the court cannot accord complete relief among existing parties" without them, and because a ruling that Plaintiff is entitled to additional benefits under those plans may "as a practical matter impair or impede the [employers'] ability to protect [their] interest[s]." Plaintiff's failure to join required parties requires dismissal of its claims under

the self-insured plans. *Travelers Indem. Co. v. Household Intern., Inc.*, 775 F. Supp. 518, 529 (D. Conn. 1991) ("an objection based on the absence of an indispensable party can be raised at any time").

Plaintiff cannot claim to be unaware of who the proper party is when seeking benefits under a self-insured plan. In *Neurological Surgery, P.C. v. Travelers Co*., 243 F. Supp. 3d 318 (E.D.N.Y. 2017), plaintiff sued the employer, Travelers, for sums it allegedly was owed under Travelers' self-insured health benefits plan.

After receiving the PAC and the list of redacted claims Plaintiff provided, Defendants reviewed their records to locate the claims in its system. (*See* Anderson Decl., ¶ 6). Based on this review, Defendants determined that at least eight (8) of the Plaintiff's patients whose claims are at issue are not covered under Cigna administered and/or insured plans. (*See* Appendix E; Anderson Decl., ¶ 6). These individuals' Plans use Cigna's SAR/Payer Solutions products, where Cigna only provides pricing information for the Plan, and does not make any benefit eligibility determinations. Cigna is not the insurer or claims administrator and has no payment responsibility whatsoever for these claims. Therefore, all of Plaintiff's causes of action against Defendants regarding these claims should be dismissed from the PAC.

## POINT II
## PLAINTIFF'S LACK OF STATUTORY STANDING UNDER ERISA IS AN UNCURABLE DEFECT IN PLAINTIFF'S PAC.

The Second Circuit has held that "[u]nder [ERISA]§502(a), a civil action may be brought 'by a participant or beneficiary' of an ERISA plan to recover benefits due to him under the terms of that plan." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017). *See also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,* 821 F.3d 352, 361-62 (2d Cir. 2016). Plaintiff here does not, and cannot allege, that it is a participant, beneficiary or a fiduciary of any of the ERISA Plans at issue. Courts in the Second Circuit have recognized a very

"narrow exception" that permits "providers to whom a beneficiary has ***assigned*** his claim in exchange for health benefits" to bring a civil action under ERISA §502. *See Murphy Med. Assocs., LLC v. Yale Univ.*, No. 24-944, 2024 WL 4656321, at *4 (2d Cir. Nov. 4, 2024); *McCulloch*, 857 F.3d at 146 (quoting *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321 (2d Cir. 2011); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016) (emphasis added). To avail itself of this limited exception, the provider "must establish the existence of a valid assignment." *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13-cv-6551 (DLC), 2016 WL 2939164, at *4 (S.D.N.Y. May 19, 2016).

Plaintiff's First Cause of Action for wrongful underpayment of benefits under ERISA §502(a)(1)(B) pertains solely to claims submitted to Cigna under the Patients' respective ERISA Plans. (Am. Compl., ¶¶ 134-44). With respect to this First Cause of Action, Plaintiff alleges that it "has standing to pursue claims under ERISA as the assignee and authorized representative of its patients who are members or beneficiaries of Cigna's ERISA Plans." (*Id.,* ¶ 136). Despite the fact that the parties have been engaged in discovery for more than a year and notwithstanding Defendants' repeated requests, Plaintiff waited until it filed its PAC to produce alleged "assignment-of-benefits forms (redacted) from a representative sampling of Cigna members." (*Id.*, ¶ 60). Here, Plaintiff attaches seven, single page forms, purportedly signed by seven different patients, with names and signatures redacted, in order to allege legal standing on behalf of the 126 total patients and 798 claims at issue, as alleged in its PAC. (*Id.*, Exh. C). Plaintiff's claim cannot survive merely because it attempted to make a last-minute showing of standing by attaching seven redacted alleged assignments to its PAC, which it baselessly alleges can stand for all of the 126 patients whose claims are at issue in this case. Even if these redacted assignments can even be proven to provide standing for seven of these 126 patients, Plaintiff still cannot show that it has a

right of action to pursue its ERISA claims for the remaining 115 patients, and thus, the First and Second Counts related to these Patients' claims must be dismissed as a matter of law. *See Farkas v. UFCW Local 2013 Health & Welfare Fund*, No. 17-cv-2598 (RJD)(RER), 2018 WL 5862741 (E.D.N.Y. Sep. 12, 2018).

Furthermore, Plaintiff's refusal to produce *any* of its purported assignments in discovery and then, divulge only the seven unidentified assignments attached to its PAC, does not help Plaintiff in its effort to assert its patients' ERISA claims. Plaintiff provides no names or other identification of the individuals who allegedly signed these seven assignments, so there is no proof that any of them even apply in this case. Plaintiff could have filed a motion to file these assignments unredacted and under seal, but instead, conveniently redacted them, without attempting to provide the Court or the Defendants with any information sufficient to tie them to any of the claims asserted in this case. Plaintiff's unexplained refusal to provide in discovery *all the assignments* it claims support its standing under ERISA is reason enough to doubt that Plaintiff has any of them. Plaintiff's attachment of seven unidentified assignments to its PAC is sufficient to remove that doubt – Plaintiff's conduct shows it does not have the assignments it alleges it has and the Court should therefore enter an order stating so and, as a result, hold that Plaintiff has no standing to pursue any of its ERISA claims.

Moreover, where the health plan at issue has an anti-assignment provision, the out-of-network provider's acceptance of an assignment from a patient is considered "ineffective – a legal nullity." *Murphy Med. Assocs., LLC v. Yale University, et al.,* No. 24-944 2024 WL 4656321 at *4 (2d Cir. 2024). *McCulloch,* 857 F.3d at 147. Anti-assignment provisions are routinely enforced in the state and federal courts of New York. *LI Neuroscience Specialists v. Blue Cross Blue Shield of Florida*, 361 F. Supp.3d 348, 356 (E.D.N.Y. 2019); *Da Silva Plastic and Reconstructive*

*Surgery, P.C. v. United Healthcare Insurance Company of New York, Inc.*, Index No. 621408/2021 (August 18, 2022).[2] Of the 118 Patients whose claims are governed by ERISA Plans in this matter, 61 of the ERISA Plans contain unambiguous anti-assignment language. (*See* Appendix A; Anderson Decl., ¶ 4, Exhs. 001-115). Accordingly, even if the Plaintiff has the patients' assignments of benefits for all the claims under these 61 plans (which, as noted above, remains doubtful), Plaintiff still has no right of action for benefits to pursue under ERISA because the anti-assignment clauses effectively nullify any assignments Plaintiff may have. *See Angstadt v. Empire HealthChoice HMO, Inc.*, No. 15-cv-1823 (SJF)(AYS), 2017 WL 10844692, at *7-8 (E.D.N.Y. Mar. 16, 2017) (*Mbody Minimally Invasive Surgery, P.C. v. Empire HealthChoice HMO, Inc.*, No. 13-cv-6551 (TPG), 2014 WL 4058321, at *2 (S.D.N.Y. Aug. 15, 2014); *Med. Soc'y v. UnitedHealth Grp. Inc.*, No. 16-cv-5265 (JPO), 2021 WL 4263717 at *5 (S.D.N.Y. Sept. 20, 2021).

To the extent Plaintiff contends that Cigna somehow waived the anti-assignment provisions of these ERISA Plans through its "direct dealings" with Plaintiff (Am. Compl., ¶¶ 91, 96), that argument is completely unavailing, as it is well-established in this Circuit that an insurance company's direct payment to an out-of-network healthcare provider does not "constitute a waiver of the provisions unequivocally preventing a Plan member/beneficiary from assigning to any third party his right to sue." *See also Rojas v. Cigna Health & Life Ins. Co.,* 793 F.3d 253, 258 (2d Cir. 2015) ("By expressly assigning only their right to payment, Rojas's patients did not also assign any other claims they may have under ERISA"); *Shuriz Hishmeh, M.D., PLLC v. Empire Health Choice Assurance, Inc.*, No. 19-cv-3144 (JMA)(ARL), 2020 WL 4452112, at *4 (E.D.N.Y. Aug. 3, 2020)(collecting cases)("Courts routinely find that when a health insurance company makes a

---

[2] A true and correct copy of the unpublished decision is attached the Mazzola Decl. as Exhibit C.

direct payment to healthcare providers, it does not constitute a waiver of any applicable anti-assignment provision."); Indeed, recently in *Neurological Surgery, P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 286 (E.D.N.Y. 2021), the court rejected a plaintiff healthcare provider's claim that an insurer waived anti-assignment provisions in the applicable health benefit plans by allowing the provider to directly submit claims to it on behalf of the patients and by paying those claims directly to the plaintiff provider. *See id*. The court held instead that this type of interaction does not override anti-assignment provisions. *See id*.; *see also Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16-cv-5265 (JPO), 2019 WL 1409806, at *10–11 (S.D.N.Y. Mar. 28, 2019).

**POINT III**
**PLAINTIFF DOES NOT HAVE A RIGHT OF ACTION TO PURSUE UNDER STATE LAW WITH RESPECT TO THE NON-ERISA PLANS**

Plaintiff's state law claims under the Non-ERISA Plans, alleged in the PAC as its Second Cause of Action (Breach of Plaintiff's Contract with Cigna), should be dismissed for the same reasons its ERISA claims should be dismissed (*See* Point II, *supra*). Namely, Plaintiff does not, and cannot, allege that it is a participant or beneficiary under any of the Non-ERISA Plans. In order to state a claim under New York state law on behalf of its Patients, a healthcare provider must obtain a *valid* assignment of benefits from its patients. *See, e.g.*, *New York Hosp. Med. Ctr. of Queens v. New York Cent. Mut. Fire Ins. Co.*, 8 A.D.3d 640, 641 (2d Dept. 2004); *T&G Med. Supplies, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2005 NY Slip Op 50636(U), ¶ 5, 7 Misc.3d 1017(A), 1017A (Civ. Ct., N.Y. Cty. 2005). Plaintiff's claims under the three Non-ERISA plans suffer from the same inadequacies that undermine its ERISA claims. Specifically, just like Plaintiff's claims under the ERISA plans, it has no standing to proceed as an assignee under the Non-ERISA plans. Just like its claims under the ERISA plans, Plaintiff provides no assignments of benefits from its patients providing it with standing under the Non-ERISA plans. Moreover, just like the 62 ERISA plans with anti-assignment clauses, the three Non-ERISA plans include valid

and enforceable anti-assignment clauses that would nullify any assignments Plaintiff might actually have (again, based on Plaintiff's conduct in discovery, it is highly doubtful that it has any assignments, valid or otherwise). (*See* Appendix B; Anderson Decl., ¶ 5, Exhs. 116-118). Accordingly, Plaintiff's claims under the Non-ERISA plans should be dismissed. *SeeMosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F.Supp.3d 191, 226 (S.D.N.Y. 2014); *Angstadt v. Empire HealthChoice HMO, Inc.*, No. 15-cv-1823(SJF)(AYS), 2017 WL 10844692, at *7-8 (E.D.N.Y. Mar. 16, 2017)(court dismissed claims related to benefit determination under non-ERISA plan based on anti-assignment provision).

**POINT IV**
**<u>ERISA PREEMPTS PLAINTIFF'S PAC.</u>**

Plaintiff's proposed state-law based causes of action for breach of implied-in-fact contract (Third Cause of Action) and unjust enrichment (Fourth Cause of Action) are preempted by ERISA because they relate to Defendants administration of claims for benefits under ERISA-governed health plans. These claims fall within ERISA's "extraordinary preemptive power," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004), which "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan," 29 U.S.C. § 1144(a). It is well-settled that claims seeking to enforce rights to benefits under ERISA plans may only be brought pursuant to ERISA §502(a), 29 U.S.C. §1132(a). *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, n. 4 (2004). Indeed, ERISA's federal preemption provision itself expressly states that: ". . . the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . .." ERISA §514(a); 29 U.S.C. §1144(a) (emphasis added).

Thus, under ERISA, state laws that interfere with ERISA's exclusive civil enforcement scheme, and in particular, state laws that provide alternate remedies to it, are preempted by ERISA

§514; 29 U.S.C. §1144(a) *See New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995); *Romney v. Lin*, 94 F.3d 74, 78 (2d Cir. 1996). Accordingly, any state common law claim that amounts to an alternative theory of recovery based on conduct actionable under ERISA is preempted.

Here, Plaintiff's Third and Fourth Causes of Action under New York state law, which "relate to" Cigna's benefit determinations under its patients' ERISA Plans, are expressly preempted and thus, should be dismissed under ERISA §514(a). (*See* Anderson Decl., ¶ 4, Exhs. 001-115). According to Plaintiff's PAC, its state law claims all relate to Cigna's administration of claims for benefits under its Patients' ERISA governed benefit Plans.[3] (Am. Compl., ¶ 98). It is undisputed that the only reason Plaintiff submitted the claims at issue to Cigna was because its Patients were participants/beneficiaries in ERISA-governed Plans that were administered by Cigna. (Am. Compl., ¶¶ 98-109). Therefore, the only way for this Court to determine whether Plaintiff's services were properly reimbursed under the ERISA Plans would be by reviewing the terms of those Plans. Because this Court must review these ERISA Plans in order to rule on Plaintiff's claims, the state law claims are expressly preempted by ERISA §514(a). 29 U.S.C. §1144(a). *See also Murphy Med. Associates, LLC v. Yale U.*, 126 F.4th 1107, 1114 (2d Cir. 2024); *Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. Oxford Health Ins. Co., Inc.*, 77 Misc. 3d 958, 962 (N.Y. Sup. Ct. 2022); *Norman Maurice Rowe, MD, MHA, LLC v. Oxford Health Ins. Co., Inc*, No. 714272/2021, 2022 WL 2980647, at *2 (N.Y. Sup. Ct. July 11, 2022); *Theunissen v. United HealthCare Grp., Inc.*, 365 F. Supp.3d 242, 247 (D. Conn. 2019).

It is worth noting that the law on this point is well-settled. Out-of-network provider

[3] This does not include the three patients' claims that arise under Non-ERISA plans. However, these claims must be dismissed because Plaintiff has no standing to pursue them as a result of the anti-assignment provisions of these plans. (*See*, *supra*, Point III; Appendix B; Anderson Decl., ¶ 5, Exhs. 116-118).

plaintiffs – like Plaintiff here – have brought numerous suits against various health insurance companies for additional reimbursement on ERISA claims by asserting state law claims, which claims have consistently been dismissed as expressly preempted by ERISA. Recently, the Second Circuit issued a decision upholding an order from the District of Connecticut that dismissed an out-of-network provider plaintiff's state law claims as expressly preempted by ERISA because the Plaintiff was seeking reimbursement for claims submitted under ERISA Plans. *See Murphy Med. Associates, LLC v. Yale U*., 126 F.4th 1107, 1114 (2d Cir. 2024). Similarly, the Second Circuit recently affirmed a Southern District decision finding that an out-of-network provider's state claims were expressly preempted by ERISA because the state law causes of action related to the defendant's administration of an ERISA-governed plan. *See Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health and Life Ins. Co*., No. 23-cv-1134, 2024 WL 2813721, *1-2 (2d Cir. June 3, 2024). Finally, in another recent decision, this Court granted the defendant insurer's motion to dismiss under similar facts as those presented here, finding Plaintiff's New York State law causes of action expressly preempted by ERISA because they "would require 'reference to' the Plan." *Norman Maurice Rowe, M.D., M.H.A., L.L.C. v. UnitedHealthcare Serv., LLC*, No. 23-cv-0516 (OEM)(ARL), 2024 WL 4252045 (E.D.N.Y. Sept. 20, 2024). *See Neurological Surgery, P.C. v. Aetna Health Inc.*, 290 F. Supp.3d 267 (E.D.N.Y. 2021) ("ERISA preempts Plaintiff's state law causes of action because, even in their most favorable light, they 'relate to' an employee benefit plan.").

Accordingly, all of Plaintiff's New York state law counts related to the 115 Patients who are participants or beneficiaries under ERISA-governed Plans, must be dismissed because they are expressly preempted by ERISA §514(a). (*See* Appendix A; *see* Anderson Decl., ¶ 4).

## POINT V
## THE PAC FAILS TO STATE A VIABLE CLAIM UNDER NEW YORK STATE LAW FOR BREACH OF CONTRACT OR UNJUST ENRICHMENT

To the extent this Court finds that any of Plaintiff's state law claims alleged in the PAC are not completely preempted by ERISA, the Court should exercise supplemental jurisdiction over those remaining state law claims. Under 28 U.S.C. §1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The court "may decline to exercise supplemental jurisdiction over a [state] claim" if (i) "the claim raises a novel or complex issue of State law"; (ii) "the claim substantially predominates" over the federal claim; (iii) the court has dismissed all other federal claims; or (iv) there are exceptional circumstances. 28 U.S.C. § 1367(c). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity." *Klein & Co.Futures Inc. v. Bd. of Trade,* 464 F.3d 255, 262 (2d Cir. 2006).

Here, as discussed above, all of Plaintiff's state law claims result from Defendants' denial/underpayment of claims for services rendered to Defendants' members, for the most part under ERISA-governed Plans. Therefore, to the extent any of Plaintiff's state law claims against Defendants are not completely preempted by ERISA (which is denied), they still "arise from the same common nucleus of operative fact" as Plaintiff's claims that are completely preempted by ERISA. *Salzberg v. Aetna Ins. Co.,* No. 17-cv-7909 (VB), 2018 WL 1275776, at *3–4 (S.D.N.Y. Mar. 12, 2018). Moreover, none of Plaintiff's state law claims "raises a novel or complex issue of State law," "substantially predominates" over the federal claim, or presents any exceptional circumstances. *See* 28 U.S.C. § 1367(c).

Accordingly, this Court should exercise supplemental jurisdiction to the extent it finds that any of Plaintiff's state law claims are not completely preempted by ERISA. *See Salzberg,*2018 WL 1265776, at *3–4; *Montefiore,* 642 F.3d at 332–33 (holding that, where all claims involve insurer's alleged failure to pay provider for medical services, state law claims are properly subject to district court's supplemental jurisdiction); *Enigma Mgmt. Corp. v. Multiplan, Inc.,* 994 F. Supp. 2d 290, 304 (E.D.N.Y. 2014) ("Since I have determined that this court has subject matter jurisdiction over Enigma's other causes of action, this court can exercise supplemental jurisdiction over the related state law breach of contract claim against Multiplan"); *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of New York, Inc.*, No. 11-cv-8517 (BSJ)(AJP), 2012 WL 4840807, at *3 (S.D.N.Y. Oct. 4, 2012) ("Defendants have demonstrated that at least one claim at issue in this litigation satisfies all three prongs of the *Montefiore* test.

Thus, this court has federal question jurisdiction pursuant to 28 U.S.C. §1331 over the claims preempted by ERISA, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the remaining state law claims."); *Berry v. MVP Health Plan, Inc., et al.,* No. 06-cv-120 (NAM)(RFT), 2006 WL 4401478, at *5 (N.D.N.Y. Sept. 30, 2006) ("[B]ecause there are at least two claims over which the Court has subject matter jurisdiction and the Court can exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367, plaintiffs' motion to remand is denied").

Having established that this Court has supplemental jurisdiction to adjudicate Plaintiff's New York state law claims, they are all subject to dismissal for failing to state a claim upon which relief can be granted.

#### ***1. Breach of Implied-In-Fact Contracts – Third Cause of Action***

To establish a claim for breach of contract under New York State law, Plaintiffs must establish: (1) the existence of a contract, (2) due performance of the contract by plaintiff, (3) breach

of the contract by defendant, and (4) damages resulting from the breach. *See El-Nahal v. FA Mgt., Inc.*, 126 A.D.3d 667, 668 (2d Dep't 2015). The existence of an enforceable, binding contract requires the following elements: "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *See Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 98 A.D.3d 403, 404 (1st Dep't 2012), *affd* 20 N.Y.3d 1082 (2013). "An implied-in-fact contract requires *all of the elements* required of any valid contract . . ." *Andrews v. Sony/ATV Music Publ'g, LLC*, No. 15-cv-7544 (AJN), 2017 WL 770614, at *4 (S.D.N.Y. Feb. 24, 2017) (emphasis added).

It is well-settled that an offer "must be plain and clear enough to establish the intended terms of the proposed contract." *See Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 104 (1st Dep't 2009), and there must be a clear and unequivocal acceptance of those terms. Moreover, "[a] meeting of the minds must include agreement on all essential terms." *Kolchins v. Evolution Mkts., Inc.*, 128 A.D.3d 47, 59 (1st Dep't 2015) *aff'd* 31 N.Y.3d 100 (2018). But "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *See Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989). Material terms include, *inter alia*, "subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production, so that the promises and performance to be rendered by each party are reasonably certain." 17A Am. Jur.2d *Contracts* § 190 (2015); *Local 917, Intern. Broth. of Teamsters v. N.L.R.B.,* 577 F.3d 70, 74 (2d Cir. 2009). In fact, where a contract does not include essential terms such as the time or manner of performance or *the price to be paid*, the contract is unenforceable. *See Venezia v. Luxoticca Retail N. Am. Inc.*, No. 13-cv-4467 (RJS), 2015 WL 5692146, at *16 (S.D.N.Y. Sept. 28, 2015).("Under New York law, 'price is an essential ingredient of every contract for the rendering of services,' such that 'an agreement must be definite as to compensation.'"); *Major League Baseball Props., Inc. v. Opening*

*Day Prods*., *Inc*., 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005); *Cleveland Wrecking Co. v. Hercules Const. Corp.*, 23 F. Supp. 2d 287, 292 (E.D.N.Y. 1998), *aff'd*, 198 F.3d 233 (2d Cir. 1999) Therefore, where there is "no meeting of the minds as to Plaintiff's compensation," the "Plaintiff has failed to demonstrate the existence of a contract." *Id.*

Here, Plaintiff's PAC fails to allege that the parties ever had a meeting of the minds as to Plaintiff's compensation; rather, Plaintiff baselessly alleges that an undefined, implied contract arose "because of pre-authorization, pre-certification, or other [unidentified] requirements." (Am. Compl., ¶ 155). Plaintiff's allegations in the PAC do not support a conclusion that there was a tacit agreement between Plaintiff and Cigna, because those allegations merely establish that, to the extent Cigna made a payment on any of the claims in issue, it was performing its obligations pursuant to the governing health benefit plans. Plaintiffs' failure to allege the specific terms of the purported contract that Cigna allegedly breached, including the amount that Cigna purportedly agreed to pay, is fatal to its breach of contract claim. *See Rowe Plastic Surgery of Long Island, P.C. v. Oxford Health Ins. Co., Inc.*, Index No. 702053/2022 at NYSCEF Doc. No. 30 (N.Y. Sup. Ct. Feb. 17, 2023) (Weiss, J.S.C.)[4]; *Rowe Plastic Surgery of Long Island, P.C. v. Oxford Health Ins. Co., Inc.*, Index No. 702045/2022 at NYSCEF Doc. No. 30 (N.Y. Sup. Ct. Feb. 22, 2023) (Caloras, J.S.C).[5]

In addition, the argument that pre-authorization or precertification amounts to an implied contract has been squarely rejected by numerous courts, including this one. For instance, in *Neurological Surgery, P.C. v. Siemens Corp.*, No. 17-cv-3477 (ADS)(AKT), 2017 WL 6397737, *5 (E.D.N.Y. Dec. 12, 2017), this court noted that in that case (like here), Plaintiff based its

[4] A true and correct copy of the unpublished decision is attached to the Mazzola Decl. as Exhibit D.

[5] A true and correct copy of the unpublished decision is attached to the Mazzola Decl. as Exhibit E.

"contractual and quasi-contractual theories on the Defendant's preauthorization," alleging that "because the Defendant provided pre-authorization and precertification, there was a meeting of the minds, which constituted an implied in fact agreement." *Id.* at *5. This court explained that "[c]ourts have expressly rejected this argument." *Id.*; *see also Star Multi Care Services, Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 287 (E.D.N.Y. 2014) ("…the complaint still does not allege facts to support an independent contractual obligation, but instead states that Empire 'provided authorization' for plaintiff's services."); *Bassel v. Aetna Health Ins. Co. of New York*, No. 17-cv-05179 (ERK)(RER), 2018 WL 4288635, at *6 (E.D.N.Y. Sept. 7, 2018) (holding that a pre-authorization merely confirms that "each Plan Member was entitled to an out-of-network benefit" and that this "hardly explains what—if any—promise Aetna made").

Plaintiff alleges in its PAC that "when an out-of-network provider renders medically necessary treatment to a Cigna Member, the Plans *obligate Cigna to reimburse for the services provided…*" (Am. Compl., ¶ 9). Plaintiff thus admits that Cigna's obligation to pay benefits covering medical treatment rendered to a Patient *is found in their health plan.* Plaintiff also alleges, in conclusory fashion, that "express contracts or contracts implied-in-fact arose between Cigna and Neurological Surgery, whereby Neurological Surgery agreed to provide covered health care services to Cigna Members in exchange for Cigna paying Neurological Surgery for those covered health care services." (Am. Comp., ¶ 116). This allegation is nothing more than a bald legal conclusion based on no factual predicate, which fails entirely to state a factual basis for the claim that a contract was ever formed between the parties. Further, the PAC alleges the actual existence of two express contracts through which it was paid for its services: Cigna's contracts to pay the Patients' covered medical expenses (the Plans), and the Patients' contracts with Plaintiff to pay it for the medical services it rendered to them. The existence of these express contracts governing

payment for Plaintiff's medical services precludes Plaintiff from creating an implied contract out of thin air between Plaintiff and Cigna for payment for those services: "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter[.]" *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, (1987); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009); *Josephson v Oxford Health Ins., Inc.*, Index No. 0443/07, 2011 WL 5358495 (Sup. Ct. Nassau Co. Oct. 31, 2011).

Lastly, the PAC fails to plead facts that identify the consideration exchanged between Plaintiff and Cigna pursuant to any alleged independent contract governing payment for the treatment rendered to the Patients. Plaintiff's PAC does not identify any benefit flowing from Plaintiff to Cigna, or from Cigna to Plaintiff. In this regard, Cigna "derive[d] no benefit from [the] services [Plaintiff rendered to Patient]; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit." *See Broad St. Surgical Ctr. LLC v. UnitedHealth Group, Inc.*, No. 11-cv-2775 (JBS)(JS), 2012 WL 762498, at *8 (D.N.J. Mar. 6, 2012) (quoting *Travelers Indem. Co. v. Losco Grp., Inc.*, 150 F. Supp.2d 556, 563 (S.D.N.Y. 2001)). In other words, Cigna received nothing of value here; only the obligation to pay Plan benefits, if any.

#### ***2. Unjust Enrichment – Fourth Cause of Action***

"To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-cv-8521 (JSR), 2023 WL 8534865, at *6 (S.D.N.Y. Dec. 11, 2023) (quoting *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 36 (2d Cir. 2017)). To prevail on an unjust enrichment claim, plaintiffs must demonstrate that the

"services were performed for the defendant." *Id.* at *6 (citations omitted); *see also Josephson v. United Healthcare Corp.*, No. 11-cv-3665 (JS)(ETB), 2012 WL 4511365, at *5 (E.D.N.Y. Sept. 28, 2012) (citation omitted) (dismissing a medical providers' unjust enrichment claim against an insurer because the medical "services were performed at the behest of [the medical providers'] patients, not United."). Additionally, Plaintiffs "must establish that it conferred a benefit upon the other party." *See Nasca v. Greene*, 216 A.D.3d 648 (2d Dep't 2023).

Plaintiff's unjust enrichment count (Fourth Cause of Action) fails because its PAC does not allege facts to support any claim that the medical services it provided to the Patients were performed at the behest of Cigna, or that its rendering of medical services to the Patients conferred a benefit on Cigna. *See id.* at *6 (dismissing unjust enrichment claim because "[t]here is no allegation that a service was performed at defendant's request"); *see also Rowe Plastic Surgery of New Jersey, L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *3 (2d Cir. Sept. 27, 2024); *Rowe Plastic Surgery of New Jersey, L.L.C. v. United Healthcare*, No. 23-cv-4352 (AMD) (JAM), 2024 WL 4309230, at *8 (E.D.N.Y. Sept. 26, 2024),

In short, medical services provided to an insured confer benefits on the *insured*—not the insurer. *See Rowe Plastic Surgery of New Jersey, L.L.C.*, 2024 WL 4315128 at *3; *Brain & Spine Surgeons of New York, P.C., v. Triple -S Salud Inc.*, No. 22-cv-08951 (PMH), 2024 WL 4150103, at *6 (S.D.N.Y. Sept. 11, 2024) ("As other courts in this circuit have reasoned, '[i]t is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured — which hardly can be called a benefit.'") (quoting *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 150 F. Supp.2d 556, 563 (S.D.N.Y. 2001); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-cv-8529 (DLC), 2024

WL 382143, at *2 (S.D.N.Y. Feb. 1, 2024) ("*Rowe N.J. II*"). Here, Plaintiff does not even attempt to allege in the PAC that Defendants received any benefit from its provision of medical services to the Patients.

Lastly, the mere fact that Cigna was aware of, or consented to, the Patients obtaining services from Plaintiff is not enough to find that these services were provided at Cigna's behest. *See, e.g., Montefiore*, 642 F.3d at 332 (healthcare provider's communications with employee benefit plan concerning whether anticipated services were covered did not create any duties or obligations beyond those applicable under the terms of the members' health plans); *Pekler v. Health Ins. Plan of Greater New York,* 67 A.D.3d 758, 760 (2d Dep't 2009) (dismissing plaintiff physician's unjust enrichment claim and finding irrelevant the fact that the defendant insurers had purportedly consented to his follow-up procedures).

**POINT VI**
**PLAINTIFF'S CLAIMS ARE OTHERWISE TIME-BARRED.**

Plaintiff's causes of action related to 52 of the 126 Patients, whose claims are at issue in this case, are time-barred. Specifically, Plaintiff's claims related to eight (8) Patients concern services rendered more than 6 years prior to the filing of Plaintiff's original Complaint. (*See* Appendix D). Therefore, Plaintiff's state law tort and contract claims related to those five (5) patients are time-barred. *See* N.Y. CPLR §§ 203(a), 231(2) (stating that actions asserted by Plaintiff in the Complaint must be commenced within six years).

In addition, as shown in Appendix C, 47 of the ERISA Plans at issue contain limitation of actions provisions. (*See* Appendix C). The ERISA Plans' limitation of actions provisions are reasonable and must be enforced as written. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99 (2013) (holding that "a participant and a[n] [ERISA] plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long

as the period is reasonable" and further holding the plan's limitations period was reasonable where "Heimeshoff was left with approximately one year in which to file suit" at the end of the administrative review process); *Kozemko v. Griffith Oil Co.*, 256 A.D.2d 1199, 1200 (4th Dep't 1998).

Plaintiff inaccurately alleges in its PAC that (1) the time limitations "were not disclosed in the summary plan descriptions provided to Cigna Members"; and (2) the contractual time limitations are unenforceable under ERISA claim regulation, 26 C.F.R. § 2560.503-1. (Am. Compl., ¶¶ 131-32). However, pursuant to 29 U.S. Code § 1022, 29 U.S. Code § 1024, and 29 C.F.R. § 2520.102–3, a summary plan description (SPD") must be provided to plan participants and beneficiaries and must accurately reflect the contents of the plan. Pursuant to 29 U.S. Code § 1024, each patient's employer and/or plan sponsor was required to provide its Members "a copy of the summary plan description … within 90 days after [becoming] a participant." Plaintiff cannot now claim or imply that Defendants intended to withhold the Plans or the specific time limitation provisions. These SPDs were not only provided to each of the plan participants whose claims (or their beneficiaries' claims) are at issue in this action, but each SPD was also produced to Plaintiff in discovery prior to filing of its PAC. (*See* Mazzola Decl., ¶ 8). Moreover, nothing in 26 C.F.R. §2560.503-1, prohibits the enforceability of contractual time limitation for a non-administrative appeal under an ERISA Plan.

Accordingly, to the extent any of Plaintiff's Counts survive Defendants' Opposition to its motion for leave to amend on other grounds, those claims are untimely under the limitations of actions provisions in the ERISA Plans, as listed in Appendix C, and in the above-referenced Non-ERISA Plans, and must therefore still be dismissed as time-barred.

## CONCLUSION

Because amendment would be futile and would unduly delay the final resolution of this case, and also prejudice Defendants, and because Plaintiff has not shown good cause why it should be permitted to amend their pleading, Defendants respectfully requests that this Court deny Plaintiff's motion for leave to amend the Complaint.

Dated: New York, New York
March 5, 2025

Respectfully submitted:

ROBINSON & COLE LLP

By: */s/ Matthew P. Mazzola*

Michael H. Bernstein
Matthew P. Mazzola
Chrysler East Building
666 Third Avenue, 20th floor
New York, New York 10017
Phone: (212) 451-2940
Email: mbernstein@rc.com
Email: mmazzola@rc.com

*Attorneys for Defendants*
*Cigna Health and Life Insurance Company and*
*Connecticut General Life Insurance Company*

**LOCAL CIVIL RULE 7.1(c) CERTIFICATION**

I, Matthew P. Mazzola, hereby certify that the foregoing Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Motion for Leave to Amend was prepared on a computer using Microsoft Word.

*Type.* A proportionally spaced typeface was used, as follows:
Name of typeface: Times New Roman
Point size: 12 Point
Line spacing: Double

*Word Count.* The total number of words in this brief, inclusive of point headings footnotes and endnotes, and exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates is 8,296 words.

Dated: New York, New York
March 5, 2025

Respectfully submitted:

ROBINSON & COLE LLP

By: */s/ Matthew P. Mazzola*

Michael H. Bernstein
Matthew P. Mazzola
Chrysler East Building
666 Third Avenue, 20th floor
New York, New York 10017
Phone: (212) 451-2940
Email: mbernstein@rc.com
Email: mmazzola@rc.com

*Attorneys for Defendants*
*Cigna Health and Life Insurance Company and*
*Connecticut General Life Insurance Company*